[No. 4039.]

## CASSERLEIGH v. GREEN.

CONTRACTS—ATTORNEY AND CLIENT.

Plaintiff procured contracts with some of the heirs of a decedent whereby he was to employ counsel and prosecute a suit for them for their interest in a mine, and was to receive as compensation two thirds of whatever they recovered. He employed defendant, a lawyer, to prosecute the suit and assigned to him one half of his interest in the contracts. At the time he employed defendant plaintiff was negotiating with the surviving widow of the deceased for a similar contract as the one made with the other heirs of which he informed defendant. Plaintiff failed to procure a contract from the widow, and afterwards defendant without the knowledge of plaintiff entered into a contract with her whereby he agreed to prosecute the suit for her for one third of what he recovered. Held that whether plaintiff placed his action upon a contract with defendant or upon the fiduciary relations existing between them as attorney and client, the trial court having resolved the facts against plaintiff upon conflicting evidence, there was no legal obligation on the part of defendant to divide with plaintiff the amount received on his contract with the widow such as would support plaintiff's action for one half thereof.

*Appeal From the Court of Appeals.*

Mr. F. J. MOTT and Mr. GEORGE W. TAYLOR for appellant.

No appearance for appellee.

*Per Curiam.* This cause is here on appeal from the court

of appeals, and our jurisdiction to review its judgment is properly invoked for appelant's claim to an interest in a freehold was resolved against him by the trial court and the judgment was affirmed by the court of appeals for the reasons given in its opinion published in 12 Colo. Appeals, 515. Therein a detailed statement of the facts is found. Only such as will elucidate our opinion will here be given.

William J. Wood died owning an interest in the Emma mining claim at Aspen, Colorado. From his heirs at law, to whom such interests descended, conveyances were obtained by Jerome B. Wheeler and others, which the grantors sought to have set aside upon the ground that they were procured by fraud. William J. Wood was not a native born citizen of the United States, and it was deemed essential by the heirs that proof be secured of his naturalization to be used in the trial of an action which they comtemplated bringing to compel a reconveyance of their respective interests. The plaintiff Casserleigh was a private detective and claimed to be, and probably was, in possession of evidence tending to establish this disputed fact and the names and residence of all of the heirs at law. He had entered into contracts with several of the sons of William J. Wood whereby, in consideration of his agreement to produce such evidence, and pay all costs and expenses of the anticipated action, he was to receive a two-thirds interest in whatever was recovered against the alleged fraudulent grantees.

The statute of limitations was about to run against the cause of action based upon the alleged fraud when Casserleigh went to defendant Thomas A. Green, an attorney, and employed him, as he says, for himself and on his own account, but, as Green asserts, in behalf of the Wood heirs, to bring the necessary action in the circuit court of the United States for the district of Colorado, and at that time assigned to Green one-half of his interest in the contracts mentioned.

Mrs. Billings was the widow, and one of the heirs at law, of

William J. Wood, and to her, under the statutes of this state, one-half of his estate descended. Haste was necessary in the beginning of the action to prevent the bar of the statute of limitations, but at the time of the bringing of the suit, which was instituted in the federal court in the month of April 1888, neither Casserleigh nor Green was authorized to represent Mrs. Billings. Casserleigh had, however, previous to the employment of Green, endeavored to secure from Mrs. Billings a contract similar to that with the other heirs, but was unsuccessful, and of that fact Green was apprised at the time of his employment; but, in order to save her rights, she was made a party to the action, as Casserleigh says, at his instance and request, but as Green maintains, at the request of one of her co-plaintiffs, and that he (Green), as the record abundantly shows, after the suit was begun notified her of what had been done, and expressly stated that he had no authority to bring the suit for her, but her name was used to preserve her rights, and that she was at liberty to employ other counsel to appear for her, if she so desired.

Later, and pending the suit, Casserleigh made further efforts to secure a contract from Mrs. Billings, and brought her, on one or more occasions, to the office of Green with a view to securing her signature to a contract already prepared, but she absolutely refused to sign it, assigning therefor reasons unnecessary here to mention. Green knew of Casserleigh's efforts in this direction, but there is no evidence that he did anything to thwart them.

Still later in the progress of that action Green, without the knowledge of Casserleigh, made an agreement with Mrs. Billings whereby he was to receive one-third of whatever interest she recovered. The action resulted in a judgment for the Wood heirs, and Mrs. Billings complied with her agreement with Green by rendering to him the stipulated compensation. This action was then brought by Casserleigh against Green to recover of him a one-half interest in the amount of the compensation

which he received from Mrs. Billings.

At the trial in the district court, without a jury, the findings of fact were in favor of defendant and the action was dismissed, and this judgment, as already stated, was affirmed by the court of appeals. Counsel for plaintiff Casserleigh here insist upon all of the errors there assigned and considered, but his chief grievance, as stated by his counsel, is that the court of appeals, as appears from its reported opinion, misapprehended the true theory upon which the case was founded and upon which it was tried and argued.

Mr. Justice Bissel, who wrote the opinion, stated that there was but one question in the case, which was one of fact, and as that was determined upon conflicting testimony, the judgment of the trial court would not be disturbed. The learned judge proceeds to say that Casserleigh "brought this suit against Green to compel him to account for one-half of whatever he got from Mrs. Billings on the theory of an express contract with Green that he was to receive a one-half interest in whatever contract Green should ultimately make with Mrs. Billings and one half of whatever he should get out of it in fighting for that particular interest in the estate."

Turning to the complaint we find averments therein that: "It was agreed by the plaintiff (Casserleigh) and the defendant (Green)  *  *  *  that, upon the institution of the suit to recover the interests of the aforesaid heirs in said mining property, Margaret Billings, the widow of William J. Wood, with whom the plaintiff had been negotiating for a contract, as was well known to the defendant, should likewise be made a party to said suit, and it was understood and agreed, between the defendant and the plaintiff, that the defendant was to have one-half (½) interest in the contract to be made by the plaintiff with Margaret Billings, the same as in the contracts with the other aforesaid heirs, *and the defendant agreed and promised to cause the said Margaret Billings to execute to the plaintiff a contract*

*similar to the one made by the other heirs under which he had been employed by the plaintiff.* * * * That contrary to his agreement with the plaintiff and in violation of the confidence and trust reposed in him, the defendant secured from the said Margaret Billings a contract made and executed to himself, without the knowledge and consent of the plaintiff; * * * and under the agreement made by defendant with the plaintiff, plaintiff became and still is entitled to one-half (½) interest in all moneys and properties so recovered by the defendant. That the defendant * * * has failed to account to plaintiff for any moneys or properties so received by him by reason of his employment as attorney for Margaret Billings, as in good conscience and equity he was required to do."

Thus it will be seen that, according to the plaintiff's own complaint, he did rely upon a contract between himself and Green, by the express terms of which he was to receive one-half of the amount of the recovery in behalf of Mrs. Billings, and that the court of appeals was correct in stating the theory upon which the action was founded.

It is true that, in the argument of appellant's counsel both in the court of appeals and here, they say they do not rely upon the contract, but that, by reason of the relation of attorney and client which existed between Green and the plaintiff as the result of the employment of the former as an attorney to prosecute the suit in the federal court, Green must be considered and held as a trustee for plaintiff as to the amount of the recovery of the Billings judgment.

It does not seem important to us, under the facts of this case, however, whether the theory of the case is as stated by the court of appeals, or essentially different, as asserted by appellant's counsel in their brief. They say that the present action is founded upon the wrongful and inequitable conduct of Green whereby his client (the plaintiff) was prevented from obtaining an understanding or contract with Mrs. Billings; that the action

is one for a breach of duty arising out of the relation of attorney and client, and the wrongful appropriation of property by the attorney; or, as otherwise expressed by them in argument, that the gist of the present action is: Could the defendant Green, while he was the attorney for plaintiff and entrusted with his rights and interests involved in the Wheeler suit, bargain for, and obtain, a contract with Mrs. Billings for which plaintiff was at the time striving, without the knowledge and consent of the latter?

We say that it is immaterial for, in either event, the basis of plaintiff's right to recover at all grows out of some contract, express or implied. That there was no express contract is conceded. That there was no implied contract was found by the trial court. While counsel strenuously insist that the relation of attorney and client existed between plaintiff and defendant, the trial court must have found from all the testimony that that relation existed only between the Wood heirs and the defendant, and not between plaintiff and defendant. In hiring Green, therefore, Casserleigh acted as the agent and representative of the Wood heirs, and not for himself, or in his own capacity, and he was not even a party to the action to prosecute which Green was employed.

But if it be assumed that Casserleigh employed Green in that action as his attorney, the mere fact of such an employment whereby the attorney was to act for the heirs with whom Casserleigh had already secured contracts did not, of itself, impose a legal obligation on Green to divide with Casserleigh the fees that he might receive under subsequent contracts made with other heirs; unless, indeed, that obligation was a part of the contract between Casserleigh and Green at the time the latter was employed for the heirs whom Casserleigh had authority to represent. In other words, if the relation of client and attorney existed between plaintiff and defendant as to the interests of the children, it certainly did not as to the interests of their mother,

Mrs. Billings. This question of fact was resolved against the contention of Casserleigh and in favor of Green, and under the established rule of this court we are not at liberty to interfere with it. So it is only necessary to say that, whether the cause of action is founded upon a contract, or based upon the fiduciary relation between the parties, the necessary facts which plaintiff must establish in order to prove his case upon either theory were, by the trial court, held, upon conflicting evidence, to be wanting. Gratitude for favors received might have prompted Green to share with plaintiff the compensation that came from Mrs. Billings, but we can enforce only legal obligation.

The precaution may not be necessary, but to avoid misapprehension it is well to say that this controversy is not to be confused, or identified, with that, if any, between plaintiff and the Wood heirs, under their alleged contracts. It may also be observed that the trial court might well have found for either party. It would be very difficult upon the record for an appellate tribunal, without a personal knowledge of the witnesses, and without opportunity to see and hear them testify, to arrive at the truth of the matter; and under our practice discussion of the irreconcilable testimony would be both useless and fruitless.

The judgment of the court of appeals is affirmed.

*Affirmed.*

Mr. Justice Steele not sitting.